IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06CV146-MU

| | |
|---|---|
| MARICIA D. ROJAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NATIONAL DIAGNOSTICS, INC. ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment. For the reasons set forth below, the motion is **GRANTED**.

**BACKGROUND**

National Diagnostics, Incorporated ("NDI") is an occupational health care management company located in Charlotte, North Carolina. The company specializes in the management and medical review of substance abuse testing programs for governmental entities, public companies, and private companies.

Ms. Rojas ("Rojas") is an African-American female who worked for NDI from March 2005 until September 21, 2005. During that time, Rojas worked as a Customer Service Representative and in the Clinical Services Department.

In July 2005, Rojas took a leave of absence from her position due to complications in her pregnancy. Her leave was approved, and while she was away, NDI hired a new employee to fill

1

Rojas' position. On September 20, Rojas called NDI's human resources supervisor to say that she planned to return to work the following day. Since Rojas' position had been filled, NDI offered her an equivalent customer service representative position. The new position had the same title, pay, benefits, job responsibilities, and advancement opportunities, but the hours were slightly different. In the new position, Rojas would work from noon-9pm, whereas in her previous position, Rojas worked from 8am-5pm.

Rojas accepted the position, but requested a schedule change to accommodate a religious commitment. NDI agreed to the change. Rojas also requested a private place, with electricity, to express her breast milk. NDI offered her access to a locked, on-site storage office, which had been used by other nursing mothers at NDI. Rojas did not inform NDI that this arrangement was unsatisfactory.

Rojas came back to work on September 21, but resigned a few hours after she had arrived.

Rojas now asserts claims for racial and gender discrimination against NDI.

**Discussion**

    A.    **Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the movant has met the initial burden, the non-moving party must come forward with specific facts demonstrating a

genuine issue for trial. Celotex, 477 U.S. at 323. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Pursuant to Rule 56(e), after "a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading," rather "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. C. P. 56(e); Anderson, 477 U.S. at 250. This is particularly important where the nonmoving party bears the burden of proof. Hughes v. Bedsole, 48 F.3d. 1376, 1381 (4th Cir. 1995). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249-50. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff. Id. at 252. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

When considering summary judgment motions, courts must view the facts in the light most favorable to the party opposing the motion. Austin v. Clark Equip. Co., 48 F.3d 833, 835 (4th Cir. 1995). "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v.

3

Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted). However, in reviewing the whole record, the Court must remember to "disregard all evidence favorable to the moving party that the jury is not required to believe" and, therefore, only "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [the] evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151.

Under McDonnell Douglas Corp. v. Green, "unlawful discrimination claims not based on direct evidence are analyzed under the burden-shifting framework." 411 U.S. 792 (1973). Using this framework, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for her job and her performance at the job was satisfactory; (3) she suffered an adverse employment action; and (4) she was not treated as well as similarly situated employees outside the protected class. See, e.g., Cottman v. Rubin, 35 Fed. App'x 53, *1 (4th Cir. 2002). If the plaintiff meets these four requirements, the burden then shifts to the defendant to articulate (not prove) a legitimate, non-discriminatory reason for the adverse employment action. St Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). If the defendant can present a legitimate, nondiscriminatory reason, the burden returns to the plaintiff, who must prove by a preponderance of the evidence that the proffered reason was a pretext for discrimination. Reeves, 530 U.S. at 143. The Court will use this burden-shifting framework to analyze each of Rojas' claims.

### B. Race Discrimination

Rojas fails to present a prima facie case of race discrimination with respect to her return

4

to employment after her leave of absence. NDI concedes that Rojas fulfills the first two elements of the prima facie case, but the Court finds that she is unable to show either the third or fourth element (suffering an adverse employment action or being treated more harshly than those outside her class) and therefore, fails to meet the standard of a prima facie case. Further, she has not shown that NDI's explanations are pretexts for race discrimination.

### i. Adverse Employment Action

The Fourth Circuit defines an adverse employment action as one where discrimination affects an "ultimate employment decision," that is, one that affects "hiring, granting leave, discharging, promoting, and compensating." Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981). If an employment decision does not result in any harm, such as a decrease in salary, benefits, or rank, is not an adverse employment action. Id. Here, Rojas fails to show that she suffered any harm upon her return to work. Although she was not offered the same schedule as prior to her leave, the second position had the same pay, job responsibilities, advancement opportunities, and benefits as her previous position. Indeed, the two positions were indistinguishable except for the difference in schedules. Such a change, where the only difference is the schedule, does not constitute an adverse employment action, a holding affirmed by the Fourth Circuit affirmed in an unpublished opinion. See Edmonson v. Potter, 118 Fed. App'x 726, 729 (4th Cir. 2004). If Rojas cannot present evidence of an adverse employment action, she cannot fulfill the third element of her prima facie case. See Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985).

5

### ii. Harsher Treatment than Those Outside a Protected Class

Although Rojas' claim cannot stand without a demonstration of an adverse employment action, the Court will continue its analysis of her claim and address the fourth element of a prima facie case: whether Rojas was treated more harshly than those outside of her protected class.

In order to fulfill this element, Rojas would have to point to similarly situated employees who took maternity leave and returned to their jobs without any schedule change. Rojas has not pointed to any such employees. NDI admits that the white employees who returned from maternity leave were reinstated in their original positions, but NDI explains this difference by pointing out that these women had non-traditional schedules before they went on leave, and further, that their jobs were still available when they returned. In order to demonstrate harsh treatment, Rojas would have to bring forth examples of white women who took maternity leave, and upon return, were reinstated in the identical position they had originally, despite their positions being rearranged or reorganized during their absence.

Finally, Rojas was given an area in which to express her breast milk. That area was the same room offered to all employees who needed to pump; there is no evidence that white employees were offered a different area.

Since Rojas fails to put forth examples of similarly situated white women who were treated differently than her, she cannot meet the standard for the fourth element of her prima facie case.

Even if this Court were to find that NDI treated the similarly situated white employees differently from Rojas, NDI has provided an explanation for the differences (that their jobs had not changed during their leave). Since Rojas has not rebutted this claim, the Court will accept

6

NDI's explanation as legitimate and non-discriminatory.

### C. Gender Discrimination

This Court's analysis of Rojas' gender discrimination claim (based on her pregnancy) will follow the same framework as its analysis of Rojas' racial discrimination claims. Once again, even if this Court assumes the Rojas fulfills the first two elements of her prima facie case, she has not met the standard of the third or fourth element, and as a result, her claim fails.

#### i. Adverse Employment Action

As with her claim for racial discrimination, showing an adverse employment action is a precondition for demonstrating a claim in gender discrimination. Using the facts and precedent set forth above, Rojas has failed to show that she suffered any adverse employment action, and therefore, she cannot meet the third element of her prima facie case.

#### ii. Harsher Treatment than Those Outside a Protected Class

Similarly, Rojas has not provided any evidence that she received harsher treatment than those outside her class. She did not present any examples of white women returning from maternity leave who were treated differently than she was. Although NDI presents examples of women who returned to their original jobs about maternity leave, NDI also offers legitimate, non-discriminatory explanations for any variance in the situations. Since Rojas does not rebut those reasons, this Court must accept the reasons set forth by NDI, and Rojas' claim for gender discrimination must fail.

In sum, Rojas fails to meet two of the four elements for her prima facie case in both her claim for racial discrimination and gender discrimination. Without a prima facie case, her claims cannot stand. For these reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

Signed: December 7, 2007

Graham C. Mullen
United States District Judge